and we'll move to our third case this morning. Pack v. Middlebury Community Schools. All right, I see Mr. Overholt. Yes, Your Honor, I'm here. And Mr. Ayers. All right, you may proceed, Mr. Ayers. Thank you. May it please the Court, Your Honors, this appeal involves my client, Kevin Pax, sued against the former employer Middlebury School Corporation. There are several issues. The judge in the district court ruled that the previous involvement of Mr. Pack and the former employer Middlebury School Corporation included a settlement agreement, which is the basis of our contract. The settlement agreement contained specific provisions involving anti-disparagement by parties against one another. The particular detail was set out in document 40 of pages 8, 7 through 10. And they provide that the school corporation will not issue or communicate disparaging information to any person after the execution of the agreement. The particular documentation includes very specific references to methods of possible disparaging information. And at page 9, provides that each party shall refrain from all conduct, verbal or otherwise, which would damage or impair in any way others' reputation, goodwill, services, or standing in the community through any medium, whether written, tangible, electronic, computerized, verbal, or any other form, including the internet, email, or other modalities. After the execution of the settlement agreement, it was discovered that the school had, within about 90 days of the execution of that, had in cooperation with a publication called The Truth and provided to the publication Affidavit, which restated several of her earlier criticisms or comments about Mr. Pack, so that basically before the ink was dry on this, the superintendent was already in violation. In her deposition, it was discovered that she didn't understand the terms of the settlement agreement. At one point, she agreed that she would have the settlement agreement removed from the website, although that has not occurred. The settlement agreement was not only the terms, I'm sorry, the terms of a press release from 2014, critical of Mr. Pack, was posted on the website of the school and has remained posted on the website of the school. Presumably, it went up in 14. It was not removed in 16 when the settlement agreement required them to cease and desist all disparagement by any means whatever, including internet and email. Right, but the language is not retrospective, and Mr. Pack could have negotiated for a removal of the press release that had previously been posted on the website, but he didn't. Everything is prospective, and so the prior posting of the press release concerning Mr. Pack's termination isn't encompassed within the four corners of the settlement agreement. It was pre-existing. That is correct. It could have been an item in the settlement agreement negotiations, but apparently it was not. The settlement agreement is prospective only. It's prospective from November 14th of 16. Right, but the press release was prior to that. The press release is a private document within the school corporation. They posted it. They left it up, whereas- Right, but he didn't vote for its removal. It was previously issued. It predates the settlement agreement. That only has to do- The predating, the first publication rules only have to do with statutes of limitation, all right? They don't say what is or isn't something that is- The question is whether- This isn't a defamation suit. This is a suit for breach of the settlement agreement, as I understand- That's correct. ... what we have before us right now, and the settlement agreement, the agreement's terms regarding disparagement are prospective. That's right. As of the 17th- Going forward, we will not disparage you, and you will not disparage us. Right. Anything that happened before is released. Liability for it is- I agree with that, but as of the 17th of November, they published that again and continue to publish it. It's been published every single day since the 17th of November in violation of the settlement agreement. You didn't negotiate for removal of the preexisting press release from the website. That was clearly something you could have put on the bargaining table and did not. So, any claim about the press release is extinguished. It's not covered by the other two claims. Well, on the press release, I would say that the publication by the affidavit of the superintendent delivered in February or so, and the negotiations of the superintendent with the publication, with the truth, are in clear violation. This is after the execution of the settlement agreement. She was in the- The affidavit, Mr. Ayers, is protected by absolute witness privilege. It is not because it was not related to any affidavit or any requirement or any compulsion. Well- Voluntary on her part, totally voluntary, and the Indiana law does not say you can issue a and be immune. The Perkins case by the Indiana Supreme Court is very clear that if the participation by even a witness is not compelled, if it's voluntary, it is not privileged. Mr. Ayers, you did not respond to the school's absolute privilege argument before the district court. Why haven't you waived that argument? No, we did. You responded to the absolute privilege argument? We responded. I don't think it was framed that way, but we responded with the information arguing that- In the motion to dismiss, the school argued that absolute privilege applied to the superintendent's affidavit, and it did not appear that you responded to that in the papers before the district court. We argued, we responded to that- Mr. Ayers, can you please let me- Mr. Ayers, can you let me finish, please? It's hard. If we're talking over each other, it's hard to hear what you're saying. And I want to make sure you understand what my question is. Thank you. So my question to you is specifically, before the district court in the motion to dismiss, the school raised the question of absolute privilege to cover the superintendent's affidavit. It does not appear that you responded to the absolute privilege argument before the district court. So why haven't you waived that? We did respond to that. We responded that the involvement of the superintendent was not, was voluntary. There's a substantial section of the briefing that points out and shows that this is totally voluntary on the part of the superintendent. That is the argument regarding whether or not it's absolutely privileged. There are three pages in the, in the billing records of Mr. Thornburg that show the interchange communication back and forth between the superintendent and the council for the newspaper resulting in her affidavit, which was not coerced. She wasn't subject to subpoena. And under Indiana law, as set out by the Supreme Court in Perkins, that's voluntary. It's not, it doesn't carry any privilege with it. Perkins really doesn't have anything to do with this case, Mr. Ayers. It had to do with the public policy exception to an employer firing an at-will employee who provides voluntary testimony, adverse testimony to the employer in an unemployment compensation hearing. It doesn't have anything to do with the issue in this case about absolute witness privilege. It is only about, it is only about absolute witness privilege. That's what Perkins case is. It's about public policy exception to firing an at-will employee who gives adverse testimony against the employer in an unemployment compensation hearing. It's about whether his employer can't do that, can't fire the employee for doing that. We're talking about a breach of contract, a breach of a settlement agreement for giving an affidavit in a lawsuit, unrelated but covering the same general subject matter in terms of the separate lawsuit that the affidavit was given in. And there's nothing in Indiana law that limits the witness privilege to compulsory witnesses. I believe that's incorrect. And I believe that Perkins case and others like it show that. Well, Perkins doesn't show that. If you have another case, I'm happy to look at it. But that's not... The language of Perkins says, we are treating this as though he was compelled because he believed he was compelled. The judge believed he was compelled, that there was a subpoena for him. But there wasn't, but we're treating it as though there was a subpoena for him. And then the language of the Perkins case goes on to talk about the status of the witness and saying that if a statement like this is voluntary, then if there's something, if there's some reason he shouldn't make it, a private reason he shouldn't make it, that's between him and his employer. And it doesn't have anything to do with witness privilege. That's the material point here. The case says it does. There is no, there is no Indiana absolute witness privilege. The cases that are cited, and unfortunately, they're mostly cited by Seventh Circuit, are based on an independent status. And the Hartman case and the other case, independent status of the universities of Indiana by which the legislature has delegated to those universities, basically the independent ability to structure their own internal justice system for things having to do with their own cases. That case, those cases do not stand for any kind of absolute litigation privilege. They really don't. So. You refer to, you refer to prospective employers. You know, the calls, the hoax calls from prospective employers, they were not prospective employers. It's pretty much that simple, isn't it? But we never said that's a, that's a false premise submitted by the schools. All we ever said about those was they showed motive. They showed intent. They didn't show any violation of the employer communication provision. They did, however, show disparagement on those dates. It is disparaging. What's prevented and unpermitted is the disparate, the issuance of disparaging comments and information. So, regardless of who made the call, is that what you're saying? It doesn't matter that they were not prospective employers. Is that what you're saying? It matters for one, it matters for one paragraph, but it doesn't matter for the other. There's a paragraph that says if a prospective employer calls, here's what you tell him. And if these were, whether these were believed to be prospective employers or just strangers, if the, if this, if the actual statements made to them were the disparaging statements, then that's a violation of another paragraph. All right. Thank you very much. Your time has expired. Mr. Overholt. Mr. Overholt, you're still on mute. Still showing mute on our side. There we go. Okay. I'm Tony Overholt, here representing the Middlebury Community Schools. The district court in this case properly granted summary judgment in favor of the school    And I'm here representing the Middlebury Community Schools. Clear terms and because of the application of Indiana's absolute privilege doctrine. First, I want to address the issue of the press release. I believe Judge Sykes asked a few questions about that. Again, the language is prospective. The language is clear. It's just like the case that we cited and that was cited by the district court. The premium auctions case. Because the language is clear that it is prospective only, there was no obligation on behalf of the school to remove the press release. And that really ends that issue. In terms of the hoax phone calls, I disagree with Mr. Ayer's statement. That somehow the fact that these are hoax phone calls doesn't really matter. That's that's incorrect. The only obligation with regard to the statements of issue from Ms. Allen, irrelevant to this case, are those statements that were made to those two people who called on Plaintiff's behalf. They were not potential employers. Therefore, under the terms of the agreement, Plaintiff has no claim. The issue I want to spend a little bit more time on is this issue about the affidavit offered by Superintendent Allen in response to the lawsuit filed by Mr. Pack against the Elkhart Truth newspaper. Under this court's decision in Reins, we know several things. First, this court in that case determined that the absolute litigation privilege applies not only to court claims, but applies to breach of contract actions like this one. Secondly, Reins stands clearly for the proposition that under Indiana law, as interpreted by this court, there is a protection of absolute privilege even for voluntary statements. As long as those statements are relevant and pertinent to the issue at hand, the privilege applies. Now, I heard Mr. Ayers today say, in response to some questions from Judge Sykes, that Perkins versus Memorial Hospital of South Bend stands for the proposition that absolute privilege is no defense to the school in this case. That's wrong. In fact, just to confirm, while Judge Sykes was asking her questions, I did a term search of Perkins. Perkins doesn't even contain the words absolute privilege. It's simply not addressed, as the court noted. Instead, it's just an unemployment compensation case dealing with a public policy exception to the at-will doctrine. It's just got no relevance here at all. There is no case after this court decided Reins that is from either this court or the Indiana Supreme Court that changes the outcome in Reins, that says anything different than this court said. And again, in Reins, this court clearly said a voluntary statement still falls within absolute privilege, even in the breach of contract context. That's exactly what we have here. A couple of other points I wanted to make. In the brief from my opponent, there are several errors with regard to dates and the timeline of the events that gave rise to all of this. I would encourage the court to rely upon the affidavit of former Superintendent Jane Allen. That affidavit can be found in the district court record. It is docket number 40-1. That lays out clearly the timeline of events here. And in addition, the district court correctly identified the key dates. And I don't think Mr. Ayers challenged those specifically on appeal. The other point I want to raise is with regard to waiver. I know there were a couple of questions from Mr. Ayers regarding this issue of waiver. And those arguments, as pointed out, have been waived. Mr. Ayers did not raise those points that he seems to be attempting to challenge now. And they were not raised before the district court. They were not raised in his brief before this court. I think this case is really straightforward. The district court was right on all counts. And summary judgment should be affirmed. If this court, I see I have quite a bit of time left. If this court has additional questions, I'm happy to answer them. Otherwise, I have nothing further. All right. Thank you very much, Mr. Ayers. You had used all your time. And I think we have your arguments. So the case will be taken under advisement with thanks to both counsel.